**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------X
RAUCH INDUSTRIES, INC.,

                               Petitioner,

             -against-                            **25 Civ. 7950 (JHR) (GS)**

                                                   **ORDER**

HEART ARTIST LLC and
CHRISTOPHER RADKO,

                               Respondents.
-----------------------------------------------------------------------X

**GARY STEIN, United States Magistrate Judge:**

Petitioner Rauch Industries, Inc. ("Petitioner" or "Rauch") brings this action against Respondents Heart Artist LLC and Christopher Radko ("Respondents"). Petitioner seeks to confirm and enforce an arbitration award issued against Respondents. (Dkt. No. 1, Petition to Confirm Arbitration Award ("Petition")).

Although Respondents have not yet been served or appeared in this matter,[1] Petitioner, through letter motion, seeks to seal several materials related to its Petition. (Dkt. No. 9 ("Pet. Ltr. Mot.")). For the reasons set forth, and to the extent indicated, below, Petitioner's motion is **GRANTED**.

## BACKGROUND[2]

This is a proceeding brought by Petitioner to confirm an arbitration award against Respondents for their allegedly unlawful breach of a Confidential

---

[1] Petitioner has filed an *ex parte* motion to serve Respondents by alternative means. (Dkt. No. 13).

[2] As Respondents have not yet been served or appeared in this action, the Court bases the following facts only on what was included in the Petition. The Court takes such facts as true for the present motion only.

Settlement Agreement. (Petition ¶¶ 13–14). The Confidential Settlement Agreement ("Agreement") resolved a trademark infringement lawsuit previously filed in this district, captioned *Rauch Industries, Inc. v. Heart Artist LLC, et al.*, No. 22 Civ. 909 (MKV) (S.D.N.Y.). (*Id.* ¶ 13).

Rauch alleged that Respondents breached the Agreement on thirty-six occasions. (*Id.* ¶ 14). The parties proceeded to arbitration to resolve these allegations. (*Id.* ¶ 16). On July 23, 2025, the arbitrator (the Honorable Barbara S. Jones) issued an arbitration award ("Award") in favor of Petitioner. (*Id.* ¶¶ 17, 25). The total amount due Petitioner under the Award is $1,297,492. (*Id.* ¶¶ 26–28). Petitioner seeks confirmation of the Award and entry of judgment under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9, and N.Y. C.P.L.R. § 7511. (*Id.* ¶¶ 28–38).

During the course of its initial filings in this case, Petitioner filed certain documents that it seeks to have sealed. Specifically, Petitioner seeks to seal its Memorandum of Law in Support of its Petition (Dkt. No. 10 ("Memorandum of Law")) and certain Exhibits to the Declaration of Kathryn K. Saba submitted in support of the Petition (Dkt. No. 11 ("Saba Declaration" or "Saba Decl.")).

More specifically, Petitioner seeks to fully seal Exhibit C to the Saba Declaration, which is the Agreement. (Pet. Ltr. Mot. at 1). In addition, Rauch seeks to temporarily seal its Memorandum of Law and Exhibits A, B, D, and F to the Saba Declaration "until Respondents have an opportunity to review the documents and determine whether they believe any sealed treatment is

2

necessary." *Id.* Exhibit A is the Award; Exhibit B are the arbitrator's transmittal email and accompanying invoices; Exhibit D is the parties' joint statement of stipulated facts in the arbitration; and Exhibit F is the arbitrator's email granting in part Respondents' request for an extension of the deadline to submit pre-trial briefing and witness statements. (Saba Decl. ¶¶ 3, 4, 6, 8).

## LEGAL STANDARDS

The public has a "general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) (footnotes omitted). "Applications to seal documents must therefore be 'carefully and skeptically review[ed] . . . to [e]nsure that there really is an extraordinary circumstance or compelling need' to seal the documents from public inspection." *Toretto v. Donnelley Fin. Sols., Inc.*, 583 F. Supp. 3d 570, 607 (S.D.N.Y. 2022) (quoting *Video Software Dealers Ass'n v. Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir. 1994)).

"A three-step analysis governs whether a filing may be submitted under seal or with redactions." *Samsung Elecs. Co. v. Microchip Tech. Inc.*, 748 F. Supp. 3d 257, 259 (S.D.N.Y. 2024) (quoting *Fairstein v. Netflix, Inc.*, No. 20 Civ. 8042 (PKC), 2023 WL 6164293, at *1 (S.D.N.Y. Sept. 21, 2023)). "'First, a court determines whether the filing is a "judicial document;" second, it determines the weight of the presumption of access afforded to the document; and third, it identifies and weighs factors "that legitimately counsel" against public access.'"

*Id.* (quoting *Fairstein*, 2023 WL 6164293, at *1); *see also Mirlis v. Greer*, 952 F.3d 51, 59 (2d Cir. 2020).

"While most material filed on a federal court's docket in the ordinary course of litigation will consist of judicial documents giving rise to a presumption of public access, the conclusion does not necessarily apply to every paper or document filed with a court." *Giuffre v. Maxwell*, 146 F.4th 165, 176 (2d Cir. 2025). "To qualify as a 'judicial document' the materials at issue must be 'relevant to the performance of the judicial function and useful in the judicial process.'" *Id.* (quoting *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995)). "All that matters in identifying motion materials as judicial documents 'relevant to the performance of the judicial function' is that they 'would reasonably have the *tendency* to influence a district court's ruling on a motion.'" *Id.* at 178 (quoting *Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019) (emphasis in original)).

"'Finding that a document is a "judicial document" triggers a presumption of public access, and requires a court to make specific, rigorous findings before sealing the document or otherwise denying public access.'" *Samsung Elecs.*, 748 F. Supp. 3d at 259 (quoting *Fairstein*, 2023 WL 6164293, at *1). "However, the right of public access is not absolute, and courts must balance competing considerations against the presumption of access." *Id.* (internal quotations and citations omitted).

4

A "party moving to place documents under seal 'bears the burden of showing that higher values overcome the presumption of public access.'" *Kewazinga Corp. v. Google LLC*, No. 20 Civ. 1106 (LGS), 2024 WL 3442428, at *1 (S.D.N.Y. July 17, 2024) (quoting *Under Seal v. Under Seal*, 273 F. Supp. 3d 460, 469 (S.D.N.Y. 2017)). "An example of a higher value is the confidentiality of sensitive commercial information." *Samsung Elecs.*, 748 F. Supp. 3d at 259 (internal quotations omitted).

## DISCUSSION

The Court will first examine whether the Agreement, Exhibit C to the Saba Declaration, warrants sealing. Next, it will consider whether the remaining materials ought to be temporarily sealed until Respondents have time to appear and offer perspective on whether those materials ought to be permanently sealed.

### A. Settlement Agreement

Petitioner seeks to seal the Confidential Settlement Agreement on the ground that it contains confidential and sensitive business information concerning its marketing plans. (Pet. Ltr. Mot. at 2). Petitioner contends that the Agreement's "detailed terms, when taken together, reveal significant information regarding Rauch's (and Respondents') sensitive marketing plans and business operations," including key elements of marketing strategy. (*Id.* at 3).

5

Petitioner assumes that the Agreement is a judicial document. (Pet. Ltr. Mot. at 2–3). The Court agrees that it is. "[S]ubmissions to a district court in support of or opposition to a motion 'can fairly be assumed to play a role in the court's deliberations.'" *Giuffre*, 146 F.4th at 179 (quoting *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 123 (2d Cir. 2006)); *see also Robert Bosch GmbH v. Honewell Int'l Inc.*, No. 14 Civ. 9432 (PKC), 2015 WL 128154, at *1–2 (S.D.N.Y. Jan. 6, 2015) (finding agreement to arbitrate, among other documents submitted during a petition to confirm arbitration, to be judicial documents).

As such, the Court must consider the weight of the presumption of public access to the Agreement. The "weight of the presumption is a function of (1) the role of the material at issue in the exercise of Article III judicial power and (2) the resultant value of such information to those monitoring the federal courts." *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 142 (2d Cir. 2016) (internal quotations and citations omitted). "[T]he presumption is at its strongest when the document in question . . . has been submitted as a basis for judicial decision making." *Cedar Swamp Holdings, Inc. v. Zaman*, 476 F. Supp. 2d 303, 304 (S.D.N.Y. 2007) (quoting *Greater Miami Baseball Club Ltd. P'Ship. v. Selig*, 955 F. Supp. 37, 39 (S.D.N.Y. 1997)).

Rauch itself has submitted the Agreement in support of its Petition, an apparent recognition that the Court may need to consider it in order to confirm the Award. At the same time, it is difficult to assess, at this very preliminary stage of the litigation, what role the Agreement may play in the Court's

6

decision-making and the value of public access. "Arbitration awards are subject to 'very limited review' to 'avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation.'" *Telecom Bus. Sol., LLC v. Terra Towers Corp.*, No. 22 Civ. 1761 (LAK), 2025 WL 2256683, at *4 (S.D.N.Y. Aug. 7, 2025) (quoting *Rich v. Spartis*, 516 F.3d 75, 81 (2d Cir. 2008)). Awards should be confirmed if there is a "barely colorable justification" for the arbitrator's outcome, even if the Court "disagree[s] with it on the merits." *Landy Michaels Realty Corp. v. Local 32B–32J Serv. Employees Int'l Union, AFL-CIO*, 954 F.2d 794, 797 (2d Cir. 1992) (quoting *Andros Compania Maritima, S.A. v. Marc Rich & Co.*, 579 F.2d 691, 704 (2d Cir. 1978)). Hence, it is certainly possible, if not likely, as Rauch contends, that the confidential business information it seeks to protect will not prove "vital" (or even material) to the Court's determination on the Petition. (Ptr. Ltr. Mot. at 3). Indeed, as Respondents have not yet been served or appeared, it is not even clear whether the Petition will be contested.

Turning to the third prong of the analysis, Rauch contends that its "privacy interest in [its] competitively sensitive information outweighs any public right to access." (Pet. Ltr. Mot. at 3). As Rauch notes (*id.* at 3–4), courts routinely seal documents to prevent the disclosure of confidential business information, including information regarding marketing strategies. *See, e.g.*, *News Corp. v. CB Neptune Holdings, LLC*, No. 21 Civ. 4610 (VSB), 2021 WL 3409663, at *2 (S.D.N.Y. Aug. 4, 2021) (permitting sealing of confidential

business information); *Nespresso USA, Inc. v. Williams-Sonoma, Inc.*, No. 19 Civ. 4223 (LAP) (KHP), 2021 WL 1812199, at *3 (S.D.N.Y. May 6, 2021) (sealing documents concerning "sensitive business information and marketing strategies that, if disclosed, could materially harm the parties involved"); *Rubik's Brand Ltd. v. Flambeau, Inc.*, No. 17 Civ. 6559 (PGG) (KHP), 2021 WL 1085338, at *1 (S.D.N.Y. Mar. 21, 2021) (sealing documents "contain[ing] proprietary and commercially sensitive information regarding the You Can Do The Rubik's Cube marketing program"); *Tropical Sails Corp. v. Yext, Inc.*, No. 14 Civ. 7582 (JFK), 2016 WL 1451548, at *4 (S.D.N.Y. Apr. 12, 2016) (finding that disclosure of "documents relating to marketing and business development activities as sales training materials, internal marketing strategies, company marketing plans, and internal emails regarding marketing tests" risked a competitive injury "sufficiently serious to warrant protection").

Based on the Court's review, the Agreement includes numerous contractual provisions that arguably constitute or reflect confidential business information regarding the parties' marketing plans and strategies, the disclosure of which might reasonably be expected to cause competitive harm. However, not only has the Court not had the benefit of hearing Respondents' position, but the broad-brush claims in Rauch's letter motion do not identify the provisions or portions of the 40-page Agreement containing the confidential and sensitive information in question or explain why Rauch would suffer competitive harm from public disclosure. *See Ndugga v. Bloomberg L.P.*, No. 20

Civ. 7464 (GHW) (GWG), 2025 WL 2302089, at *2 (S.D.N.Y. Aug. 11, 2025) (noting that "case law holds that '[t]he party opposing disclosure must make a particular and specific demonstration of fact showing that disclosure would result in an injury sufficiently serious to warrant protection; broad allegations of harm unsubstantiated by specific examples or articulated reasoning fail to satisfy the test'" (quoting *In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 244 (S.D.N.Y. 2009)).

Perhaps more importantly, the confidential information Rauch relies upon appears to be set forth in discrete provisions of the Agreement. Rauch has not advanced an argument as to why the *entire* Agreement should be sealed— the relief it seeks—as opposed to just those parts of the Agreement containing confidential and sensitive business information.[3] *See, e.g., United States v. Glob. Bus. Travel Grp., Inc.*, No. 25 Civ. 215 (VM), 2025 WL 487619, at *3–4 (S.D.N.Y. Feb. 13, 2025) (finding that "[w]hile the Court is mindful that Exhibit A may contain sensitive business materials, Defendants have not sufficiently justified why a blanket seal of this document is appropriate" and directing defendants to refile the document "with narrowly tailored redactions").

Accordingly, the Court declines to rule at this time as to whether the Agreement should remain under seal, in its entirety, for the remainder of this

---

[3] The Agreement is denominated a "Confidential Settlement Agreement," and it is common for parties settling litigation to want to keep the terms of the settlement confidential. Yet Rauch does not argue that the Agreement should be sealed for this reason.

9

litigation. Based on Rauch's proffer to date, however, the Court agrees that the Agreement may temporarily remain under seal for the time being. To that extent, and that extent only, Rauch's request to seal the Agreement is granted.

### B. Materials for Temporary Sealing

Rauch applies for temporary sealing of several documents "to afford Respondents the opportunity to propose any redactions or sealing in full." (Pet. Ltr. Mot. at 4). Rauch notes that under the International Institute for Conflict Prevention and Resolution ("CPR") Fast Track Rules for Non-Administered Arbitration, "[u]nless the parties agree otherwise, the parties, the arbitrators and CPR shall treat the proceedings, any related discovery and the decisions of the Tribunal, as confidential, except in connection with judicial proceedings ancillary to the arbitration, such as a judicial challenge to, or enforcement of, an award, and unless otherwise required by law or to protect a legal right of a party." (Pet. Ltr. Mot. at 4 (quoting CPR Non-Administered Rule 18)). As such, although Rauch "does not seek sealing of these documents, it recognizes" that they may contain information "Respondents believe should remain confidential." (*Id.*).

These materials, also submitted in support of the Petition, are judicial documents. *See Aioi Nissay Dowa Ins. Co. Ltd. v. ProSight Specialty Mgmt. Co., Inc.*, No. 12 Civ. 3274 (JPO), 2012 WL 3583176, at *6 (S.D.N.Y. Aug. 21, 2012) ("It is well settled that the petition, memoranda, and other supporting documents filed in connection with a petition to confirm an arbitration award

(including the Final Award itself) are judicial documents . . . .") (internal quotations and citations omitted). In some circumstances, courts have found that the presumption of public access outweighs the confidentiality that attaches to arbitral proceedings. *See, e.g.*, *Maheu v. Twitter, Inc.*, No. 25 Civ. 836 (GHW), 2025 WL 1730227, at *4 (S.D.N.Y. June 20, 2025) (finding that "[t]he preservation of the confidentiality of an arbitral award, by itself, is not a 'higher value' that overcomes the presumption of access") (citation omitted); *Eletson Holdings, Inc. v. Levona Holdings Ltd.*, No. 23 Civ. 7331 (LJL), 2023 WL 5956144, at *5 (S.D.N.Y. Sept. 13, 2024) (denying sealing or redaction in dispute over whether to confirm an arbitration award as, "[u]nder these circumstances, the fact that the award is the product of an otherwise-confidential arbitration proceeding is entitled to no independent weight"). But in other circumstances, courts have found that sealing of such materials is warranted. *See, e.g.*, *Chapey v. Khan*, No. 25 Civ. 2266 (PAE), 2025 WL 1078300, at *1–2 (S.D.N.Y. Apr. 9, 2025) (sealing documents "pursuant to a protective order entered into during an arbitral proceeding," while noting the court would enter an order granting petition to confirm the arbitral award, which was unopposed, that same day); *see also Stafford v. Int'l Bus. Machines Corp.*, 78 F.4th 62, 69–71 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 1011 (2024).

At this stage of the litigation, it would be inappropriate to order the unsealing of Petitioner's Memorandum of Law or Exhibits A, B, D, and F to the Saba Declaration without having heard from Respondents as to whether they

11

believe any of these materials, or any portions thereof, should be kept under seal. If Respondents do seek to keep any of these materials sealed, they will need to support that application "by identifying the sensitivity of the particular material sought to be sealed and how continued sealing would be narrowly tailored to protect that sensitivity and to preserve higher values or to achieve countervailing factors." *Eletson Holdings*, 2023 WL 5956144, at *5. Thus, this Court will expect Respondents, once they have been served and appeared, to inform the Court promptly as to whether they seek to keep any of these materials sealed and, if so, on what basis.

The Court therefore grants Rauch's motion for temporary sealing of its Memorandum of Law and Exhibits A, B, D, and F to the Saba Declaration.

## CONCLUSION

For the foregoing reasons, and to the extent set forth above, Petitioner's motion to seal is **GRANTED**.

**SO ORDERED.**

DATED:   New York, New York
         November 17, 2025

                                                The Honorable Gary Stein
                                                United States Magistrate Judge